**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**

**v.**
                                                      **23-CR-65 JLS**

**CHARLES WATKINS,**

                      **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. John L. Sinatra, Jr., in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Charles Watkins ("the defendant"), is charged in a multi-count indictment with having violated Title 21 U.S.C. §§ 841(a)(1) and 856(a)(1) and Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He has filed a motion wherein he seeks suppression of the use of evidence seized from premises located at 302 Esser Avenue and 287 Busti Avenue, Buffalo, New York pursuant to a search warrant issued by this Court on May 16, 2023. Dkt. #14. The defendant also filed a motion to suppress the use of alleged statements made by the defendant as evidence at his trial. Dkt. #16.

The government has filed its opposition to these motions. Dkt. #s 15, 18.

Oral Argument on the motions was heard by this Court and the matter was taken under advisement.

## DISCUSSION AND ANALYSIS

### A. The Defendant's Claim of No Probable Cause for the Search Warrants

The defendant asserts that "all items obtained pursuant to the search of 302 Esser and 287 Busti should be suppressed because the search warrant was not supported by probable cause." Dkt. #14-1, p. 3. In support of this claim, the defendant makes the following argument:

> Notably, the warrant application does not include any information as to why the "credible source" is identified as credible (*i.e.* the warrant does not include any information of credible information provided in the past, or anything of the like, it simply refers to the individual as credible, without basis. Nor is any specific address for this cocaine distribution operation identified by the supposed "credible source"; the base of the operation is stated only as the "Western New York area," which of course is a large geographical location. (Search Warrant Application at ¶ 7). There is also no timeline provided for this alleged distribution of cocaine. *Id.* With respect to the "cooperating source," there is again no indication of why this individual, who had been arrested and ostensibly has criminal charges pending against them, is

>credible. *Id.* at ¶¶ 8-9. Further, there is no time or place provided of when this individual supposedly purchased cocaine from Mr. Watkins, nor is any information about the cocaine provided, *i.e.* packaging, amount purchased, etc. Finally, with respect to the wiretapped conversations, none of the telephone conversations actually discuss the sale or distribution of cocaine (indeed cocaine is never mentioned in any conversation), nor does any conversation identify the addresses of 287 Busti Avenue or 302 Esser Avenue. *Id.* at ¶¶ 12-23, 30-34.

Dkt. #14-1, p. 2.

The search warrants authorizing the search of 302 Esser and 287 Busti were based on an Application and Affidavit of Special Agent Heitzhaus sworn to May 16, 2023 (23-MJ-68). His affidavit consisted of 43 typewritten pages wherein he describes in detail his "personal knowledge" based upon "reports and other information received from other law enforcement officers and agencies and other law enforcement activities." 23-MJ-68, Dkt. #1, p. 3, ¶ 3.

Under the collective or imputed knowledge doctrine, information obtained from other law enforcement officials may be used to form the basis for probable cause in seeking a search warrant. *United States v. Hensley*, 469 U.S. 221 (1985); *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). Also, the training and experience of an agent can be considered in determining whether probable cause exists. *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied* 486 U.S. 1043 (1987).

The argument put forth by the defendant amounts to an attempt to reinstate the two prong test that was eliminated by the United States Supreme Court in its decision in *Illinois v. Gates*, 462 U.S. 213 (1983) wherein the court stated:

> We agree with the Illinois Supreme Court that an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case, which the opinion of the Supreme Court of Illinois would imply. Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.
>
> This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., at 175, 69 S.Ct., at 1310. Our observation in United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is also applicable to the probable cause standard:Id at 231.
>
> "Informants' tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity. "One simple rule will not cover every situation." Ibid.7 Id. at 232.

Moreover, the "two-pronged test" directs analysis into two largely independent channels—the informant's "veracity" or "reliability" and his "basis of knowledge." See nn. 4 and 5 supra. There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. See, e.g., Adams v. Williams, supra, 407 U.S., at 146–147, 92 S.Ct., at 1923–1924; Harris v. United States, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).Id at 233.

Unlike a totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged test" has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.  Id. at 234 - 235

 Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). See United States v. Harris, 403 U.S. 573, 577–583, 91 S.Ct. 2075, 2079–2082, 29 L.Ed.2d 723 (1971).10 We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable cause determinations of magistrates than is the "two-pronged test." Id. at 236 - 237.

For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations. See Jones v. United States,

supra; United States v. Ventresca, supra; Brinegar v. United States, supra. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, supra, 362 U.S., at 271, 80 S.Ct., at 736. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli. Id. at 238 - 239

Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work. In Jones v. United States, supra, 362 U.S., at 269, 80 S.Ct., at 735, we held that an affidavit relying on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." We went on to say that even in making a warrantless arrest an officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Ibid. Id. at 241 - 242.

       In his affidavit, Special Agent Heitzhaus describes 302 Esser Avenue, Buffalo, New York as the "primary residence and parole address" for the defendant and states that 287 Busti Avenue, Buffalo, New York "is believed by law enforcement to be the stash house for [the defendant]." He states that the defendant was "identified as a source of supply" of powder and base cocaine" that was made known by a "credible source" in July of 2022 to HSI, which "information was corroborated by a HSI

6

Cooperating Source (CS)." In February of 2023, HSI arrested an individual "and recovered multiple firearms, 50.4 grams of cocaine and 268 grams of methamphetamine." This individual became a "cooperating source" who "participated in proffer sessions with his attorney and the government and advised federal agents "that [the defendant] was one of his SOS" from whom the source "was buying cocaine multiple times a week until arrested in February 2023. 23-MJ-86, Dkt. #1, pp. 6-7, ¶s 7-9.

In March of 2023, law enforcement "intercepted communications" pursuant to an eavesdrop warrant that the defendant was supplying narcotics to an individual under investigation. A telephone number being used for these communications was determined to belong to the defendant. The defendant was also observed by a pole camera surveillance as conducting a "suspected hand to hand narcotics transaction." 23-MJ-68, Dkt. #1, pp. 9-11, ¶s 12-17.

In April 2023, the defendant learned of the pole camera surveillance and, as a result, he moved his narcotic supplies to 302 Esser Avenue." This was learned by law enforcement by way of intercepted telephone communications by the defendant pursuant to a search warrant authorizing such interceptions. 23-MJ-68, Dkt. #1, pp. 11-12, ¶ 18. Surveillance of the premises located at 302 Esser Avenue and continued interception of defendant's telephone communications caused Special Agent Heitzhaus

7

to believe, "based on training and experience, that the defendant was using 302 Esser Avenue in his narcotic activity as a supplier." 23-MJ-68, Dkt. #1, pp. 13-15, ¶s 21-23.

Intercepted telephone communications between the defendant and one of his drug customers in April 2023 established a "detailed narcotics transaction" that is to take place at or in the immediate vicinity of 287 Busti Avenue. 23-MJ-68, Dkt. #1, pp. 22-28, ¶s 30-31.

The complete affidavit of Special Agent Heitzhaus consisting of 43 typewritten pages, 23-MJ-68, Dkt. #1, creates a totality of circumstances that would cause a reasonable law enforcement agent to believe that probable cause existed for the issuance of the search warrants authorizing the search of 302 Esser Avenue and 287 Busti Avenue. This affidavit read in its totality and applying "practical common sense" was more than sufficient to provide probable cause to the magistrate judge for the issuance of the search warrants authorizing the searches of 302 Esser Avenue and 287 Busti Avenue. Therefore, it is recommended that the defendant's motion seeking suppression of the use of the evidence pursuant to these search warrants be denied.

**B. The Good Faith Exception Under *United States v. Leon***

The defendant argues that the search warrants for 302 Esser and 287 Busti Avenue "lack[ed] merit such that the officer's reliance on it was unreasonable" and

therefore, "the good faith exception does not apply, and the items seized should be suppressed." Dkt. 14-1, pp. 5-6.  This argument is totally without legal merit.  In Fourth Amendment cases, the primary purpose of the exclusionary rule is to deter police misconduct, not to remedy the invasion of the defendant's rights.  *United States v. Leon*, 468 U.S. 897, 906 (1984).  As the Supreme Court stated:

> [S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.
>
> \* \* \*
>
> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.  In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.  "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." (citation omitted). Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id*. at 918, 921.

      As stated above, probable cause had been lawfully established for the issuance of the search warrants authorizing the searches of 302 Esser Avenue and 287 Busti Avenue and therefore the non-application of good faith under *Leon* is a moot issue.  Nevertheless, if it is determined that probable cause did not exist for the issuance of these search warrants, the good faith principle under *Leon* would apply and

9

exclusion of evidence seized pursuant to those warrants should be denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  See, e.g., *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>**.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

10

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**


DATED:   Buffalo, New York
         November 16, 2023

                                         *S/ H. Kenneth Schroeder, Jr.*
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**

11